UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                                    Crim. No. 09-109 (JNE/JJK)

        Plaintiff,

v.

1. Roberto Guadalupe Aleman, also                **REPORT AND**
known as Cono;                                   **RECOMMENDATION**
2. Maria Isabel Aleman; and
3. Juan Fidel Aleman;

        Defendants.

---

Jeffrey M. Bryan, Esq., and Christian S. Wilton, Esq., Assistant United States Attorneys, counsel for Plaintiff.

Craig E. Cascarano, Esq., Cascarano Law Office, counsel for Defendant (1) Roberto Guadalupe Aleman.

Douglas B. Altman, Esq., Altman & Izek, counsel for Defendant (2) Maria Isabel Aleman.

Steven L. Bergeson, Esq., Tuttle Bergeson, PA, counsel for Defendant (3) Juan Fidel Aleman.

---

JEFFREY J. KEYES, United States Magistrate Judge

## INTRODUCTION

This matter has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Dist. Minn. Loc. R. 72.1 on the following pretrial motions:

    <u>Defendant (1) Roberto Guadalupe Aleman</u>
    -    Motion to Suppress Confessions, Admissions, or Statements
         Made in the Nature of Confessions (Doc. No. 622),

- Motion to Suppress Evidence Obtained Through Illegal Search (Doc. No. 625), and
- Motion to Suppress Search and Seizure Evidence (Doc. No. 626);

<u>Defendant (2) Maria Isabel Aleman</u>
- Motion to Suppress Evidence Obtained Through Electronic Surveillance or Wiretapping (Doc. No. 769), and
- Motion to Suppress Evidence Resulting from Searches and Seizures (Doc. No. 772); and

<u>Defendant (3) Juan Fidel Aleman</u>
- Motion to Suppress Evidence of Electronic Surveillance and Wiretapping (Doc. No. 551),
- Motion to Sever Defendant (Doc. No. 570),
- Motion to Sever Counts (Doc. No. 572),
- Motion to Suppress Statements, Admissions and Answers of Defendant (Doc. No. 546), and
- Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 573).

A criminal-motions hearing was held before the undersigned on November 3, 2009, at which Alcohol, Tobacco, and Firearms Special Agent Jayme Syversen testified. (*See* Doc. No. 804.) Following the hearing on these motions, the Court established a post-hearing briefing schedule so that the Defendants could present written argument regarding their pretrial motions. Defendant (1) Roberto Guadalupe Aleman did not file a post-hearing brief. Defendant (2) Maria Isabel Aleman also chose not to submit any post-hearing briefing and instead submitted her motions on the moving papers already filed. (Doc. No. 813.) Defendant (3) Juan Fidel Aleman filed a post-hearing memorandum (Doc. No. 823, Def. Juan F. Aleman's Mem. in Supp. of Suppression of Wiretaps ("Def. Juan Aleman's Mem.")), but only raised argument

2

regarding suppression of the results of electronic surveillance, and did not address his other pretrial motions.  For the reasons that follow, this Court recommends that all of the motions be denied.

**BACKGROUND**

The three Defendants named above have been charged with multiple counts of conspiracy to distribute methamphetamine and cocaine, conspiracy to commit money laundering, and other related offenses.  (*See* Doc. No. 114.)  As part of the investigation of the offenses charged in the Superseding Indictment, federal law-enforcement officials attempted a number of techniques to uncover evidence of a suspected drug-trafficking organization ("DTO"), in which the three Defendants were suspected to be involved.  (Doc. No. 804, Tr. of Criminal Mots. Hr'g ("Tr."), *passim*.)  Special Agent Syversen explained that he and other officers first attempted to use cooperating individuals, including informants and cooperating defendants, as well as controlled purchases to obtain information about the DTO.  (Tr. 13.)  However, the officers were only able to identify some of the individuals involved in the DTO and some of its methods for transporting and distributing cocaine from Mexico into the United States because of the informants' reluctance to testify for fear of reprisal and the limited success of controlled purchases.  (*Id.* at 13-15.)  The officers also had difficulty conducting surveillance of Defendant Juan Aleman (*Id.* at 15), and of various locations with which Juan Aleman was believed to be associated.  (*Id.* at 15-18.)

3

Syversen testified that the investigation did not involve seeking search warrants in the early stages because the investigating officers believed that executing warrants early on would provide limited results and impede uncovering more information about the scope of the DTO.  (Tr. 20.)  Syversen and his team instead attempted to use pen registers to uncover information about the DTO suspects who were communicating by telephone, but they had limited success in this effort because several of the individuals they were investigating used fake names, thus making it difficult to identify whose phone was used on any given call.  (*Id.* at 20-21.)  Similarly, the circumstances surrounding the various locations the officers believed were connected to the DTO's members made searches of the trash from those locations impracticable.  (*Id.* at 21-22.)  At one location, the occupants of the residence never placed trash outside, and at another, officers determined the location of the residence made approaching it difficult and dangerous.  (*Id.*)  Grand jury subpoenas for financial information regarding the DTO's members also provided limited information.  (*Id.* at 23.)

After being presented with these and other investigative difficulties, Syversen and his team decided to seek a Title III wiretap of several target phones.  (Tr. 7, 23.)  On January 13, 2009, these officers obtained authorization for a wiretap of three telephones, two of which belonged to Defendant Roberto Aleman, and another belonging to Defendant Juan Aleman.  (*Id.* at 7; Hr'g Exs. 1-4.)  This wiretap was to last for up to 30 days.  (Hr'g Ex. 3 at 3-4.)  Just prior to

4

the expiration of this 30-day period, Syversen and his team sought an extension of the wiretap for an additional 30 days for the same three target telephones, and received an Order authorizing the extension. (Tr. 24-25; Hr'g Exs. 6-9.) Syversen's team sought the extension because the full scope of the DTO had not yet been discovered and other methods of investigation had limited success. (Tr. 26-27.) Syversen's team stopped listening to Juan Aleman's target telephone before the 30-day period because he was no longer using it. (*Id.* at 28-29.) Later, on March 12, 2009, Syversen's team sought a second extension for the two telephones used by Roberto Aleman, and received an Order authorizing the intercepts. (*Id.* at 28-30; Hr'g Exs. 16-19.)

After encountering several difficulties with other investigative techniques aimed at Defendant Maria Aleman (Tr. 35-39), on February 17, 2009, based on information Syversen's team obtained through their wiretap investigation, officers sought a Title III wiretap for a fourth telephone belonging to her. (*Id.* at 33; Hr'g Exs. 11-12.) The District Court issued an Order authorizing this wireless intercept for a 30-day period. (Tr. 34; Hr'g Ex. 15.) Shortly after the 30-day period expired on the wiretap of Maria Aleman's phone, on March 26, 2009, the team applied for and were granted an Order authorizing an additional 30-day wiretap of Maria Aleman's phone. (Tr. 40-41; Hr'g Exs. 21-24.)

Once all of the wiretaps were discontinued, the investigating officers closed the wiretaps by applying for and obtaining sealing Orders. (Tr. 42-44;

5

Hr'g Exs. 26-33.) Prior to closing down the wiretaps, agents listened to approximately 9,600 phone calls and monitored each phone call to determine if it was pertinent to the investigation. (Tr. 44.) For each phone that was the target of the wiretap, agents completed a minimization memorandum detailing the steps taken by the listening officers to avoid overhearing non-pertinent information. (Tr. 10-11, 26, 30-31, 34-35; Hr'g Exs. 5, 10, 15, 20.) For each wiretap, agents also filed 10-day reports with the District Court regarding their efforts in compliance with the Orders authorizing the electronic surveillance. (Tr. 45.)

Agents investigating the DTO involved in this case also executed several search warrants in the District of Minnesota and the Southern District of Texas. (*Id.*) These search warrants sought information related to the DTO believed to be located at several residences and in one vehicle. (Hr'g Exs. 34-49.)

## DISCUSSION

**I.    Roberto Guadalupe Aleman's Motions**

    **A.    Motion to Suppress Confessions, Admissions, or Statements Made in the Nature of Confessions**

As noted above, Roberto Aleman has not filed a memorandum or made any other argument regarding his motion to suppress statements. The motion itself asserts that Roberto Aleman's statements indicated in the Government's notice were taken in violation of his constitutional rights. However, there is no evidence before this Court regarding the circumstances of any statements Roberto Aleman made to law-enforcement officials. Therefore, there is no record

on which this Court can determine whether Roberto Aleman's rights were violated, and his motion to suppress should be denied accordingly.

    **B.    Motion to Suppress Evidence Obtained Through Illegal Search and Motion to Suppress Search and Seizure Evidence**

Roberto Aleman's motions to suppress evidence obtained through search and seizure assert that the searches and seizures in this matter were conducted in violation of his Fourth Amendment rights. However, he has presented no argument regarding these alleged violations of his right to be free from unreasonable searches and seizures, and this Court's review of the evidence in this case, including the search warrants admitted at the October 13, 2009 hearing, reveals no such violations. Therefore, this Court recommends that Roberto Aleman's motions to suppress be denied.

**II.    Maria Isabel Aleman's Motions**

    **A.    Motion to Suppress Evidence Obtained Through Electronic Surveillance or Wiretapping**

As noted above, Maria Aleman did not submit a post-hearing memorandum in support of her motions, but informed this Court that she wished to rest on the motion papers already filed in this matter. Maria Aleman's motion asserts that the wiretaps used in this matter to intercept communication on her telephone violated 18 U.S.C. § 2510, *et seq.*, and that the motion is based on the files and records in this case as well as the testimony provided at the motion hearing. (Doc. No. 769.) Absent some specific argument regarding the manner

7

in which Maria Aleman asserts that the Government violated the rules for obtaining or administering a wiretap, this Court would have to inappropriately place itself in the position of advocate to scour the record for arguments on her behalf. Although this Court has not reviewed the record for the purpose of raising arguments on Maria Aleman's behalf, the Court has reviewed the record, and the record confirms that the Government appears to have followed the required procedures for seeking, obtaining, and administering a Title III wiretap. Therefore, this Court recommends that Maria Aleman's motion to suppress the results of electronic surveillance be denied.

> **B.    Motion to Suppress Evidence Resulting from Searches and Seizures**

Maria Aleman also seeks to suppress evidence obtained through the execution of search warrants at a Bridge Street address, Third Street address, and Flora Avenue address in Hidalgo, Texas, the execution of a search warrant for a vehicle, and any other locations for which she has standing to contest a search. However, she has presented no argument regarding these alleged violations of her right to be free from unreasonable searches and seizures, and this Court's review of the search warrants for the locations she mentions in her suppression motion reveals no facts warranting suppression. Therefore, this Court recommends that Maria Aleman's motion to suppress be denied.

### III. Juan Fidel Aleman's Motions

#### A. Motion to Suppress Evidence of Electronic Surveillance and Wiretapping

Juan Aleman's challenge to the wiretap evidence is that "the necessity requirement" has not been met. "More specifically, it is the Defendant's position that the Government had sufficient information prior to the first wiretap to prosecute this case against him." (Def. Juan Aleman's Mem. 1.) Section 2518 of Title 18 of the United States Code sets forth the necessity requirement, noting that each application for interception of wire communication must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). "The necessity requirement of 18 U.S.C. § 2518 ensures 'that wiretaps are not routinely employed as the initial step in an investigation.'" *United States v. Jackson*, 345 F.3d 638, 644 (8th Cir. 2003) (quoting *United States v. Thompson*, 210 F.3d 855, 858-859 (8th Cir. 2000), and *United States v. Maxwell*, 25 F.3d 1389, 1394 (8th Cir. 1994)).

The necessity requirement is met where other investigative tools reasonably appear to be unlikely to sufficiently expose the full extent of the conspiracy—in terms of members and in terms of scope or drug quantity—to obtain convictions against those conspirators. *See Maxwell*, 25 F.3d at 1394 (citing *United States v. Macklin*, 902 F.2d 1320, 1327 (8th Cir. 1990)); *see also*

*United States v. Smith*, 909 F.2d 1164, 1166 (8th Cir. 1990) (concluding that necessity was established where the affidavit demonstrated that traditional procedures failed to expose the full extent of the conspiracy and all conspirators); *United States v. O'Connell*, 841 F.2d 1408, 1414-15 (8th Cir. 1988) (same).

The Order authorizing the interception of wire communications that is the subject of Juan Aleman's motion was issued by District Court Judge James M. Rosenbaum on January 13, 2009. In issuing the Order, the District Court found that there was probable cause to believe that Juan Aleman, as well as other members of the alleged DTO, violated various federal laws prohibiting the possession, distribution, and sale of controlled substances. The Court made a specific finding that the necessity requirement of 18 U.S.C. § 2518 was met: "It has been established that normal investigative procedures have been tried and have failed, reasonably appear to be unlikely to succeed if tried, or are too dangerous to employ." (Hr'g Ex. 3 ¶ 3.)

The application for the Order authorizing the wiretaps was based on a 67-page affidavit of the Drug Enforcement Agency Special Agent Warren Adamson, which detailed the extensive investigation of the DTO, including the evidence collected concerning Juan Aleman's activity as one of the principals in that DTO. The Government sought the wiretap authorization because it sought to obtain direct evidence that would convince a jury beyond a reasonable doubt of:

    (a)    [t]he full scope, methods, extent, and personnel involved in the [DTO];

(b) [t]he identity and role of the members of the DTO, including the suppliers, sellers, buyers, couriers, financiers, and other coconspirators involved;

(c) [t]he period of operation of the DTO;

(d) the management, disposition, and money laundering of revenues and proceeds obtained by the DTO; and

(e) the identity of assets held under fictitious names.

(Hr'g Ex. 2 at ¶ 88.)

Agent Adamson set forth, specifically and in detail, each of the customary investigative techniques that are usually employed in an investigation of a drug trafficking conspiracy, but which had in this case been tried and failed, or reasonably appeared unlikely to succeed if continued or tried, or would be too dangerous to employ. These included use of confidential sources, under-cover investigations, physical surveillance, search warrants, pen registers and the toll records, trash searches, use of grand-jury subpoenas, and review of financial records.

At the motions hearing on November 3, 2009, Agent Syversen gave specific and detailed testimony regarding why the wiretap interceptions were necessary and why other techniques appeared reasonably likely to fail. He explained that the investigators had limited success using cooperating informants who made several controlled purchases from individuals, including Juan Aleman, in the organization. The problem was that the investigators were only able to identify some of the principal members of the conspiracy, some of the methods

11

utilized, and some of the ways the illegal drugs were transported from Mexico to Texas, and ultimately Minnesota. (Tr. 13-23.)

In addition to the limited knowledge of the informants, Agent Syversen explained how each of the informants was "very reluctant to testify" because each believed that the leaders of the DTO had connections to a criminal cartel in the area near the Gulf of Mexico who the informants thought "could harm their family, [and] could harm them, and [thus] they were very reluctant to testify or willing to do that." (*Id.* at 13-14.)

Agent Syversen also explained why conducting physical surveillance was difficult in this investigation. This included Juan Aleman's use of counter-surveillance measures, such as turning around abruptly to detect any law-enforcement officials who may be following him, while leaving the scene of a controlled purchase. (*Id.* at 14-15.) Surveillance was also particularly difficult because the organization operated out of a trailer park and rural, isolated residences. The trailer park was comprised of a closed community of residents who would easily spot surveillance, and law-enforcement officers were unable to get within a mile of the open, countryside area surrounding the residents without risking detection. (*Id.* at 15-17.) In addition, unmanned electronic-video surveillance was utilized with only limited success. (*Id.* at 17-18.)

Further, although law-enforcement officers attempted to identify members of the conspiracy by analyzing telephone-subscriber information and telephone

activity, the problem was that actual users of the telephone numbers in question did not use their real names and addresses, but would provide fake names in registering the phones or use disposable phones that do not have to be registered. (*Id.* at 19-20.) Agent Syversen also explained that search warrants, if executed too early in an investigation, carry substantial risk that the targets of the investigation will be alerted and evidence, which is often spread out over different residences and locations, will be destroyed. (Tr. 20.) He also testified that trash searches had been attempted, but were of limited use because of their conspicuousness and because the Defendants never left trash outside of a trailer in St. Cloud, a primary point of operation. (*See id.* at 21.)

In sum, the wiretaps were requested for the purpose of discovering the full scope of the conspiracy, the full extent of the criminal activities, and to identify and successfully prosecute each member of the organization. Agent Adamson's affidavit in support of the wiretap authorization, and the testimony of Agent Syversen at the motion hearing, detailed the conventional investigative techniques used by law-enforcement officers before they sought the wiretap authorization. The methods included surveillance, confidential informants, trash collection, pen registers and toll-record information, and showed the difficulties law-enforcement officers encountered and explained why the investigative methods that were attempted failed to discover the full scope of the conspiracy. The affidavit and testimony also established the limited use, and problems

13

associated with, other traditional investigative techniques such as grand-jury subpoenas, search warrants, and undercover investigation.

Juan Aleman argues that the Government should have engaged in an undercover investigation to infiltrate the drug conspiracy before seeking wiretap authorization. Through such infiltration, he argues, the Government may have been able to obtain much more information about the organization than could be obtained through the limited involvement of the confidential informants who only had contact with a few members of the organization. However, there is no requirement that all investigative techniques be exhausted before a wiretap is authorized. *See Maxwell*, 25 F.3d at 1394 ("Even if conventional techniques have been somewhat successful, however, a wiretap may still be authorized."). And Agent Adamson, in his affidavit, testified that law-enforcement officials had been advised by their confidential informant that Defendant Juan Aleman, and his brothers, would not meet with an outsider with whom they had not done business in the past. Adamson, an experienced DEA agent, swore that there was no avenue known to him whereby an undercover agent could infiltrate this DTO to be in a position to provide information that was any different from that provided by the confidential informants while, at the same time, be assured of his or her safety and/or abide by the standards of conduct prescribed by law or administrative policy. (Hr'g Ex. 2 ¶ 93.)

Juan Aleman also argues that the traditional investigative techniques that

14

had been utilized before the wiretap authorization provided law-enforcement officials with sufficient evidence to pursue his prosecution for drug-related offenses.  However, the focus of this wiretap application was on the conspiracy itself, not merely those individuals like Juan Aleman who were involved, and the Government adequately established their need for a wiretap to, at a minimum, discover the full scope of the conspiracy and the full extent of the criminal activities.  *See Jackson*, 345 F.3d at 645.  For these reasons, Juan Aleman's motion to suppress evidence obtained through the wiretaps used in the Government's investigation should be denied.

>    **B.    Motion to Sever Defendant and Motion to Sever Counts**

Juan Aleman has filed a motion for severance of defendants and another for severance of counts pursuant to Rule 14 of the Federal Rules of Criminal Procedure, asserting that he should be given a separate trial from his co-defendants and that he should be given separate trials on the various counts against him in the Superseding Indictment.

"Co-conspirators 'will generally be tried together.'"  *United States v. Abdul-Ahad*, Crim. No. 08-142(7) (DSD/SRN), 2009 WL 35473, at *2 (D. Minn. Jan. 5, 2009) (quoting *United States v. O'Meara*, 895 F.2d 1216, 1218 (8th Cir. 1990)).  Courts have discretion under Fed. R. Crim. P. 14(a) to sever co-defendant trials or joinder of offenses where the joinder of the trials would prejudice a defendant.  "A general complaint of prejudice is an insufficient basis for severance."  *Abdul-*

*Ahad*, 2009 WL 35473, at *2.  A defendant must show that trial of the offenses together or joinder of trials with co-defendants will clearly prejudice him, which means that "the defendant is deprived of an appreciable chance that he would not have been convicted in a separate trial[.]"  *O'Meara*, 895 F.2d at 1219.

Juan Aleman's motions contain only conclusory statements regarding the impropriety of joinder of his case with that of his alleged co-conspirators and the trial of the various counts asserted against him together.  Such general complaints of prejudice are insufficient to warrant severance.  Here, the Superseding Indictment charges Juan Aleman with several counts of trafficking cocaine and methamphetamine as part of a larger drug-trafficking conspiracy.  The record before this Court suggests that "proof of the charges against each of the Defendants is based on the same evidence and acts."  *See O'Meara*, 895 F.2d at 1218 (citing *United States v. Voss*, 787 F.2d 393, 401 (8th Cir. 1986)).  For these reasons, this Court recommends that Juan Aleman's motions for severance of counts and severance of his trial with his co-defendants be denied.

### C. Motion to Suppress Statements, Admissions and Answers of Defendant

As noted above, Juan Aleman has not filed a memorandum or made any other argument regarding his motion to suppress statements.  The motion itself asserts that any statements he made were taken in violation of his Fifth and Sixth Amendment rights.  However, there is no evidence before this Court regarding the circumstances of any statements Juan Aleman made to law-enforcement

16

officials. Therefore, there is no record on which this Court can determine whether Juan Aleman's rights were violated, and his motion to suppress should be denied accordingly.

### D. Motion to Suppress Evidence Obtained as a Result of Search and Seizure

Juan Aleman's motion to suppress evidence asserts that any searches and seizures performed were conducted without probable cause, exigent circumstances, or any other justification, and it asserts that the searches exceeded the scope of any probable cause that did exist. However, he has presented no argument regarding these alleged violations of his right to be free from unreasonable searches and seizures, and this Court's review of the search warrants provided at the October 13, 2009 hearing reveals no facts warranting suppression. Therefore, this Court recommends that Juan Aleman's motion to suppress be denied.

## RECOMMENDATON

Based on the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that**:**

1. Defendant (1) Roberto Guadalupe Aleman's Motion to Suppress Confessions, Admissions, or Statements Made in the Nature of Confessions (Doc. No. 622), be **DENIED**;

2. Defendant (1) Roberto Guadalupe Aleman's Motion to Suppress Evidence Obtained Through Illegal Search (Doc. No. 625), be **DENIED**;

3. Defendant (1) Roberto Guadalupe Aleman's Motion to Suppress Search and Seizure Evidence (Doc. No. 626), be **DENIED**;

4. Defendant (2) Maria Isabel Aleman's Motion to Suppress Evidence Obtained Through Electronic Surveillance or Wiretapping (Doc. No. 769), be **DENIED**;

5. Defendant (2) Maria Isabel Aleman's Motion to Suppress Evidence Resulting from Searches and Seizures (Doc. No. 772), be **DENIED**;

6. Defendant Juan Aleman's Motion to Suppress Evidence of Electronic Surveillance and Wiretapping (Doc. No. 551), be **DENIED**;

7. Defendant Juan Aleman's Motion to Suppress Statements, Admissions and Answers of Defendant (Doc. No. 546), be **DENIED**;

8. Defendant Juan Aleman's Motion to Sever Defendant (Doc. No. 570), be **DENIED**;

9. Defendant Juan Aleman's Motion to Sever Counts (Doc. No. 572), be **DENIED**; and

10. Defendant Juan Aleman's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 573), be **DENIED**.

Date: January 8, 2010

*s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **January 22, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within 14 days after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.